FRITZSCHE BROS., INC. *v.* UNITED STATES

No. 6285.—Invoice dated Amritsar, India, February 1945.
Certified February 1945.
Entered at New York, N. Y., June 12, 1945.
Entry No. 735521.

(Decided June 13, 1946)

*John D. Rode* (*John D. Rode* and *Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the defendant.

MOLLISON, Judge: This is an appeal for reappraisement from a value found by the United States appraiser at the port of New York on certain musk pods imported from India. The record shows that musk pods are actually glands taken from the musk deer which is found in the Tibetan Himalayas. Hunters of the deer extract the pods which are traded locally and ultimately are collected by larger dealers, who, apparently, in turn, offer them through brokers for sale generally to the trade dealing in perfume materials. The valuable contents of the pods are the musk grains, from which is extracted the desired principle, grain musk, usually in the form of a tincture.

There is no dispute that the merchandise in issue was contracted and paid for at a price of $21 an ounce, and that the sale represented by the importation at bar was of 200 ounces "net weight of goods in their original state at time of shipment to New York by parcel post" (collective exhibit 1). The total price stated on the invoice is $4,200 United States currency, including consular fee of $2.50. An additional charge of $12 was made for registration and postage.

It clearly appears from the record that only 184½ ounces of pods

arrived in New York, the difference between the shipped and arrival weights being due to loss by evaporation of moisture during the voyage of importation.

Entry was made at a value of $20 an ounce, plus 9 cents per ounce for packing, and appraisement was made at the same value of $20 an ounce, plus 8.40108 per centum, plus packing, on the basis of export value, which is defined in section 402 (d) of the Tariff Act of 1930 as follows:

The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

I note that the *per se* invoice price was $21 per ounce and that the *per se* entered value was $20 per ounce. Since the entered value was used as the basis for the appraiser's advance, presumably the difference between the invoiced and entered values reflected a drop in the market value of $1 an ounce.

It is admitted by counsel for the defendant that the 8.40108 per centum advance over the *per se* entered value made by the appraiser, equaling an appraised unit value of $21.680216 per ounce, was so made because in the opinion of that officer the merchandise had increased in value during the voyage of importation by reason of loss of weight, and the effort of the plaintiff on the trial of the issue was limited to the production of evidence bearing on the question of whether the shrinkage or loss of weight on the voyage of importation in fact increased the value of the merchandise.

The following stipulation was entered into by counsel for the parties:

It is hereby stipulated and agreed by and between the attorney for the plaintiff and the Assistant Attorney General for the United States that the export value on the date of exportation of the merchandise the subject of the above entitled appeal to reappraisement was higher than the foreign value of such or similar merchandise.

I conclude from the foregoing that there is no question before me concerning foreign value, and that the matter at issue is solely the export value of the merchandise at bar.

The difference between the values claimed by the parties is the 8.40108 per centum advance made by the appraiser because of shrinkage. It follows that that officer considered the entered value of $20 per ounce to represent the value of the merchandise before shrinkage. The defendant obviously takes the position it does by reason of the fact that the plaintiff paid the full purchase price without any allowance for shrinkage. It must be remembered, however, that under the

export-value provision of the statute we are here seeking to determine the value of musk pods such as or similar to those in issue, not in the United States, but in India.

The position of the defendant would probably be correct if it were the fact that the unit of quantity in which such or similar musk pods were sold in India was the lot. However, the record clearly shows that the unit in which such merchandise is usually bought and sold is the ounce, and the merchandise was both entered and appraised in ounces, and not as a lot.

Competent witnesses for the plaintiff established that in the purchase and sale of musk pods in India the moisture content of the pods is not a factor; that the unit of purchase is the ounce, and that the purchaser assumes the risk of loss by evaporation after shipment, no allowance being made by reason of the receipt of a lesser quantity because of shrinkage on the voyage of importation.

It is likewise clear from the record that the loss of moisture does not result in an increase in value in musk pods since the evaporated portion contains some of the odoriferous constituents, which are the most valuable parts of the musk.

In my view the situation in the case is akin to that which would obtain had a portion of the merchandise been destroyed by fire or other casualty on the voyage of importation. I am satisfied that the shrinkage after shipment of the merchandise at bar did not increase the value thereof.

I therefore find the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, to be proper basis for the determination of the value of the merchandise here involved, and that such value was the entered value.

Judgment will issue accordingly.